UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:21-cr-61-RBD-DCI

ERIC LANCE REYNOLDS

**GOVERNMENT'S BRIEF IN COMPLIANCE
WITH COURT ORDER (DOC. 54)**

The United States of America, by Karin Hoppmann, Acting United States Attorney for the Middle District of Florida, hereby offers the following information in compliance with the Court's Order (Doc. 54).

**STATEMENT OF FACTS**

1.  On a date unknown to the government, the defense filed an *ex parte* motion requesting that the Court issue three subpoenas pursuant to Federal Rule of Criminal Procedure 17(b) and (c)(1). The Defendant requested that the Court issue subpoenas directing three entities (i.e., those operating the applications KiK, Grindr, and Telegram (collectively, the Service Providers)) to produce to the Defendant non-content records and information pertaining to the Defendant.

2.  On June 23, 2021, following the Court's consideration of an *ex parte* supplemental briefing, and an *ex parte* hearing, this Court entered an order directing the Defendant, the government, and each of the Service Providers, to file a brief of no more than 25 pages addressing the following issues:

    a.  whether each of the Service Providers is an entity providing to the public an electronic communications service or a remote computing service, as contemplated in Title II of the Electronic Communications Privacy Act of 1986 (ECPA) – *i.e.,* the Stored Communications Act (SCA), 18 U.S.C. § 2701-2712;

    b.  whether any statute (including any provision of the ECPA or the SCA, as amended) prohibits the Court from issuing the subpoenas at the Defendant's request; and

    c.  if the Court is prohibited by statute from issuing the subpoenas at the Defendant's request, whether the Defendant's right to compulsory process under the Sixth Amendment to the United States Constitution would render any such statutory prohibition unconstitutional.

<u>**MEMORANDUM OF LAW**</u>

**I.    The Stored Communications Act - Generally**

The SCA, 18 U.S.C. §§ 2701 *et seq.,* was enacted in 1986 as part of the Electronic Communications Privacy Act ("ECPA"). *See* Pub. L. No. 99 508, 100 Stat. 1860 (Oct. 21, 1986). The SCA sets forth statutory provisions that govern how stored wire and electronic communications may and may not be lawfully disclosed by a provider of "an electronic communication service" or by a provider of "remote computing service" (collectively, "service providers").[1] *See* 18 U.S.C. §§ 2701-2713.

---

[1] An "electronic communication service" is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). A "remote computing service" is "the provision to the public of computer storage or processing

Section 2702 of the SCA restricts service providers that provide services to the public from disclosing communications and other records except in specified circumstances. Captioned "Voluntary disclosure of customer communications or records," § 2702 begins with general prohibitions against disclosure by service providers. First, it states that a service provider that provides services to the public "shall not knowingly divulge to any person or entity the contents of" certain communications. 18 U.S.C. § 2702(a)(1)-(2). Second, it states that a service provider that provides services to the public "shall not knowingly divulge" certain non-content information, such as records "pertaining to a subscriber to or a customer of such service," "to any governmental entity." 18 U.S.C. § 2702(a)(3).

Section 2702(b), captioned "Exceptions for disclosure of communications," then sets forth a series of circumstances under which a service provider "may divulge the contents of a communication." 18 U.S.C. § 2702(b). § 2702(b) provides that a service provider "may divulge the contents of a communication": "(1) to an addressee or intended recipient of such communication or an agent of such addressee or intended recipient," "(2) as otherwise authorized in section 2517, 2511(2)(a), or 2703 of [Title 18];"[2] "(3) with the lawful consent of the originator or an addressee or intended recipient

---

services by means of an electronic communications system." 18 U.S.C. § 2711(2). The relevant provisions of the SCA apply with equal force to both. *See* 18 U.S.C. § 2702(b)-(c) (permitting providers of either service to divulge the contents of communications and non-content information under certain specific circumstances).

[2] As discussed *infra*, § 2703 provides three mechanisms by which a service provider can be *required* to disclose certain information to the government. 18 U.S.C. § 2703. Section 2517 authorizes limited disclosures of intercepted wire, oral, or electronic communications, primarily by law enforcement officers, 18 U.S.C. § 2517, and § 2511(2)(a) addresses

3

of such communication, or the subscriber in the case of remote computing service," and "(6) to the National Center for Missing and Exploited Children, in connection with a report submitted thereto under section 2258A." 18 U.S.C. § 2702(b).

As relevant here, Section 2702(c) next sets forth a separate series of exceptions for disclosure of "record[s] or other information pertaining to a subscriber to or customer of" a service provider, not including contents of communications. 18 U.S.C. § 2702(c). Among other exceptions, the statute specifies that service providers "may divulge" such information "as otherwise authorized in section 2703," 18 U.S.C. § 2702(c)(1), "with the lawful consent of the customer or subscriber", 18 U.S.C. § 2702(c)(2), "to the National Center for Missing and Exploited Children, in connection with a report submitted thereto under section 2258A," 18 U.S.C. § 2702(c)(5), or "to any person other than a governmental entity," 18 U.S.C. § 2702(c)(6).

Section 2703, captioned "Required disclosure of customer communications or records," regulates how governmental entities can require service providers to disclose information. 18 U.S.C. § 2703. The statute provides three different mechanisms governmental entities can use to acquire such information: subpoenas, court orders, and warrants. *See, e.g.,* 18 U.S.C. § 2703(a) (providing that "[a] governmental entity may require the disclosure" of the contents of a communication pursuant to a warrant). Section 2703 also permits governmental entities to require service providers to preserve evidence pending the issuance of legal process, and § 2705 allows governmental entities

---

disclosures by switchboard operators and officers, employees, and agents of service providers, 18 U.S.C. § 2511(2)(a).

to obtain court orders directing service providers not to disclose the existence of legal process. *See* 18 U.S.C. §§ 2703(f), 2705(b).

**II.    Issues Posed by the Court**

    **a.  The Service Providers are subject to Title II of the Electronic Communications Privacy Act of 1986 (ECPA)—i.e., the Stored Communications Act (SCA), 18 U.S.C. §§ 2701-2712.**

The SCA dictates privacy rights for users of two different kinds of services: electronic communication services (ECSs) and remote computing services (RCSs). Its language applies to the services, and differing levels of protection are afforded to records held by an ECS provider versus an RCS provider. Per 18 U.S.C. § 2510(15), ECS is defined as any service which provides to users the ability to send or receive wire or electronic communications. An electronic communication is, in relevant part, a transfer of writing, images, sounds, or data transmitted in whole or in part by wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate commerce. 18 U.S.C. § 2510(12).

RCS is defined by 18 U.S.C. § 2711(2) as "provision to the public of computer storage or processing services by means of an electronic communications system." An "electronic communications system" is "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." 18 U.S.C. § 2510(14);

Communication applications like Kik, Grindr, and Telegram, are services that provide "to users thereof the ability to send or receive . . . electronic communications."

5

18 U.S.C. § 2510(15). *See In re United States for PRTT Order for One Whatsapp Chief Account for Investigation of Violation of 21 U.S.C. § 841*, 2018 WL 1358812, at *4 (finding WhatsApp, a smartphone messaging application, as providing an ECS). Therefore, the applications are entities providing to the public an electronic communications service pursuant to Title II of the Electronic Communications Privacy Act of 1986 (ECPA)—i.e., the Stored Communications Act (SCA), 18 U.S.C. §§ 2701-2712.

It is likely that this Court will find Kik, Grindr, and Telegram to be more like an ECS provider than an RCS provider because the applications do not send data to a third party for storage. Generally, however, the distinction between ECS and RCS providers largely turns on the service, or the electronic communication, that is being provided at the particular time, as many providers can be an ECS and RCS simultaneously. *See In re U.S.*, 665 F.Supp.2d 1210, 1214 (D.Or.2009); *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 987-90 (C.D. Cal. 2010) (holding among other things that Facebook was both an ECS and an RCS in context of facilitating and hosting the private messages exchanged on its platform). The distinction in restrictions applicable to an ECS and an RCS, however, relate to disclosure of communications, and therefore, because the issue at hand relates to non-content information, it is unnecessary to determine whether the Service Providers at issue function as both an ECS and RCS simultaneously.

Kik is a smartphone messaging application and an ECS provider pursuant to 18 U.S.C. § 2510. Kik is a cell phone application where users can send texts, pictures, and videos from unique usernames to other users through the application. Kik Law Enforcement Guide, *Kik*

https://whispertextllc.my.salesforce.com/sfc/p/#3i000000p5lk/a/3i0000008bAK/CW1L2ytEKOiWrb4g4pjWwTctyCTJyVxi8mUcM2PGO_8 (last updated Feb. 2021). The app uses a phone's existing data plan or Wi-Fi connection to run the app and contact other Kik users. *Id.*

Grindr is a social networking app and smartphone messaging application and an ECS provider pursuant to 18 U.S.C. § 2510. Grindr markets itself as an app for "gay, bi, trans, and queer people" that allows users to send messages containing text, images, video, and voice to users within a 100m radius of the phone user's location. What is Grindr?, *Grindr*, https://help.grindr.com/hc/en-us/articles/1500012474961-What-is-Grindr- (last visited July 9, 2021). Users may also use the search feature to "Explore" users in other regions, but only paid subscription users can contact the users in "Explore". *Id.*

Telegram is an instant messaging application and is an ECS provider pursuant to 18 U.S.C. § 2510. On Telegram, users can send messages, photos, videos, and files to other app users. What is Telegram?, *Telegram*, https://telegram.org/faq#q-what-is-telegram-what-do-i-do-here (last visited June 28, 2021). Telegram users can be found via phone number, username, or by using a "people nearby" section that uses the phone's location to connect users who are nearby. *Id.* Telegram is cloud-based so users can access their messages from multiple devices. *Id.*

As noted above, to qualify as an ECS provider under the SCA, an entity must provide users the ability to communicate electronically with each other. The crux of applications like Kik, Telegram, and Grindr is to allow their users to communicate

electronically with other users. Kik, Telegram, and Grindr all allow users to private message or create group messages between other users of each respective application. Because the Service Providers provide their users the ability to send and receive electronic communications, they are ECS providers within the meaning of the SCA.

      **b. There are no statutes or provisions of the ECPA or SCA that prohibit the Court from issuing a subpoena for records at the Defendant's request, so long as the request falls under an enumerated exception to the prohibition in § 2702(a)**

Section 2702 begins with general prohibitions directing that service providers "shall not knowingly divulge" the contents of communications "to any person or entity" or non-content information "to any governmental entity." 18 U.S.C. § 2702(a). It follows these prohibitions with a series of exceptions in § 2702(b) and § 2702(c) that allow for disclosure of content and non-content information under certain enumerated circumstances. These exceptions are phrased as categories of information that a service provider "may divulge." 18 U.S.C. § 2702(b)-(c). "May," in turn, can mean "[t]o be allowed or permitted to." Webster's II New Riverside University Dictionary 734 (1984). In this context, the "may divulge" terminology simply excuses service providers from the general prohibitions of § 2702(a) by *permitting* disclosure; it does not allow service providers to disregard mandatory disclosure requirements imposed elsewhere by law. As the California Supreme Court explained in adopting this interpretation of § 2702, stating that a service provider "may" engage in the otherwise proscribed conduct is a natural way indeed the most natural way to express such an exception." *Facebook v. Superior Court (Hunter),* 417 P.3d 725, 751 (Cal. 2018) (quoting *Negro v. Superior Court,* 230 Cal. App. 4th 879, 902 (Cal. Ct. App. 2014)).

Thus, those exceptions permit disclosure, but they do not confer discretion upon service providers to decline to disclose information if that information falls within such an exception and it is the subject of an otherwise lawful subpoena. When read in conjunction with Federal Rule of Criminal Procedure 17, authorizing the issuance of subpoenas on behalf of a defendant[3], it does not appear that any statute or provision of the SCA prohibits the Court from issuing the requested subpoena for non-content on behalf of the defense for information falling under an exception set forth in 18 U.S.C. § 2702(c), nor does it appear that the Service Providers retain any discretion in the disclosure of the subpoenaed information. While there is very little, if any, binding caselaw directly on point, two considerations support this position: the structure and content of § 2702, and persuasive caselaw and legislative history.

### i.  The structure and content of § 2702

Though the language of the SCA does not explicitly contain a provision that details the methods when a criminal defendant can require disclosure, it similarly does not prohibit the required disclosure of information pursuant to a subpoena under Rule 17(b), so long as the requested information falls into one of the exceptions under § 2702(b) or (c). Further, the language in § 2702(b) and (c), does not provide Service Providers with discretion in determining whether or not to disclose information.

First, as a matter of straightforward statutory interpretation, the most reasonable interpretation of the statutory phrase "may divulge" is as giving service providers *permission* to disclose information, not as necessarily giving service providers *discretion* to

---

[3] Subject to a fact-based inquiry outlined in *United States v. Nixon*, 418 U.S. 683 (1974).

withhold information. This is particularly clear in light of the fact that multiple exceptions following "may divulge" actually *require* disclosure.

The SCA itself demonstrates that its use of the phrase "may divulge" in § 2702 does not preempt other legal provisions compelling a service provider to disclose information. In particular, § 2702(c)(1) states that a provider "may divulge" a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) (i.e., non-content information) as authorized in § 2703, but § 2703 sets forth provisions *requiring* disclosure to governmental entities; service providers may not choose whether or not to comply with, for example, a warrant for the contents of a communication. *See* 18 U.S.C. § 2703(a) (providing that "[a] governmental entity *may require* the disclosure by a provider . . . of the contents of a wire or electronic communication" with a warrant (emphasis added)).

Similarly, § 2702(c)(5) states that a provider "may divulge" non-content information to the National Center for Missing and Exploited Children ("NCMEC") "in connection with a report submitted thereto under section 2258A." 18 U.S.C. § 2702(c)(5). Section 2258A, in turn, *mandates* disclosure by service providers under certain specified circumstances. *See* 18 U.S.C. § 2258A(a)(1)(A)(i) (stating that a provider "shall" make a report to NCMEC when it obtains information related to specified online child sexual exploitation activities). These § 2702(c) exceptions demonstrate that § 2702's use of the term "may divulge" means that disclosures under § 2702(c) are *permitted* notwithstanding the general prohibitions set forth in § 2702(a), not that such disclosures are necessarily discretionary. As the California Supreme Court

10

explained: "The subdivision where 'may' appears is framed not as a grant of discretionary power *or* as the imposition of a mandatory duty but as a special *exception* to a general *prohibition.* In such a context all 'may' means is that the actor is excused from the duty, liability, or disability otherwise imposed by the prohibition." *Facebook, Inc. v. Superior Court (Hunter),* 417 P.3d 725, 751 (Cal. 2018).

    **ii. Case law and legislative history**

Second, the available case law and legislative history provide support to this interpretation of the statute. Numerous district courts across the country have concluded that subpoenas for non-content information, which "may" be divulged to persons other than governmental entities under the exception set forth in 18 U.S.C. § 2702(c)(6), are enforceable. *See, e.g., Sines v. Kessler,* 2018 WL 3730434, at *10-*11 (N.D. Cal. Aug. 6, 2018); *Haw. Regil Council of Carpenters v. Yoshimum,* 2017 WL 738554, at *3-*4 (D. Haw. Feb. 17, 2017); *Site B, LLC v. Does 1-51,* 2014 WL 902688, at *4 (N.D. Ill. Mar. 7, 2014); *TCYK, LLC v. Does 1-87,* 2013 WL 5567772, at *3 (N.D. Ill. Oct. 9, 2013); *CineTel Films, Inc. v. Does 1-1,052,* 853 F. Supp. 2d 545, 555 n.5 (D. Md. 2012); *Patrick Collins, Inc. v. Does 1-11,* 2011 WL 5439045, at *4 (D. Md. Nov. 8, 2011); *First Time Videos, LLC v. Does 1-500,* 276 F.R.D. 241, 247 (N.D. Ill. 2011).

Further, the California Supreme Court's interpretation of § 2702 as permitting disclosure, not empowering service providers to refuse disclosure, is well-reasoned and persuasive. *Hunter,* 417 P.3d at 749-752. Although the district court cases supra do not discuss the meaning of "may divulge" to the same extent that *Hunter* does, they

demonstrate an understanding that the SCA does not preclude subpoenas for information that falls within a § 2702 exception.

Moreover, § 2702(a)(3) prohibits a provider of ECS or RCS to the public from disclosing a "record or other information pertaining to a subscriber to or customer of such service to any governmental entity." § 2702(a)(3). Non-content, however, may be freely disclosed by ECS and RCS providers to non-governmental entities. 18 U.S.C. § 2702(c)(6). A "governmental entity" is a department or agency of the United States or any State or political subdivision thereof. 18 U.S.C. § 2711(4).

In determining whether a defendant was entitled to a court order under 18 U.S.C. § 2703(d), the United States District Court for the Northern District of Ohio held that neither the court nor the federal public defender are "governmental entities" under the SCA, so they could not seek a court order under § 2703(d), reserved solely for governmental entities. *United States v. Amawi*, 552 F. Supp. 2d 679, 680 (N.D. Ohio 2008). The court reasoned, "[t]he judiciary is not a department or agency of the United States; thus, the judiciary and its components, including the Federal Public Defender, cannot obtain a court order under § 2703(d)." *Id*. Because the non-content information being sought in the instant case is on behalf of a defendant, a non-governmental entity, the request for such information falls under the exception outlined in 18 U.S.C. § 2702(c)(6), and its disclosure is permissible.

Assuming the Defendant otherwise meets the factors identified in *United States v. Nixon*, 418 U.S. 683, 699-700 (1974), and the requested information aligns with a permissible disclosure under § 2702(c), the government is unaware of a statute or

provision of the SCA which would prohibit the court from issuing the requested subpoenas under Rule 17. The issuance of subpoenas is within the sound discretion of the trial court. *United States v. Thomas*, 62 F.3d 1332 (11th Cir. 1995).

### c. The Defendant's Right to Compulsory Process

The Sixth Amendment guarantees that a criminal defendant shall "have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. But before there can be a violation of the right to compulsory process, a criminal defendant must "establish some colorable need" for the evidence to be compelled. *Cf. Hoskins v. Wainwright,* 440 F.2d 69 (5th Cir.1971) ("The right to compulsory process is not absolute, and a state may require that a defendant requesting such process at state expense establish some colorable need for the person to be summoned, lest the right be abused by those who would make frivolous requests.")

This Court need not reach the fact-intensive constitutional issue if the Court concludes that the Court is not prohibited from issuing the subpoenas requested by the Defendant. This interpretation of the SCA harmonizes with the principle that "it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense, and that exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Nixon,* 418 U.S. at 709-10.

In order to invoke the Compulsory Process Clause protection, the defendant must establish some colorable need for the evidence to be compelled. *United States v. Capers*,

13

708 F.3d 1286, 1304 (11th Cir. 2013). Therefore, if the Court is prohibited by statute from issuing the subpoenas at the Defendant's request, a fact-intensive inquiry would be required to determine whether or not the Defendant's right to compulsory process has been violated.

## CONCLUSION

WHEREFORE, the United States respectfully files this brief in compliance with this Court's Order (Doc. 54).

Respectfully submitted,

KARIN HOPPMANN
Acting United States Attorney

By:  /s/ *Jennifer M. Harrington*
JENNIFER M. HARRINGTON
Assistant United States Attorney
Florida Bar No. 0117748
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:  (407) 648-7500
Facsimile:  (407) 648-7643
E-mail:  Jennifer.Harrington2@usdoj.gov

U.S. v. ERIC LANCE REYNOLDSCase No. 6:21-cr-61-RBD-DCI

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Thomas B. Luka, Esq.
Counsel for the Defendant

*/s/ Jennifer M. Harrington*
JENNIFER M. HARRINGTON
Assistant United States Attorney
Florida Bar No. 0117748
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:   (407) 648-7500
Facsimile:   (407) 648-7643
E-mail:   Jennifer.Harrington2@usdoj.gov