AF Approval __NA____                                    Chief Approval ___CAB__

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                            CASE NO.   6:21-cr-61-RBD-DCI

ERIC LANCE REYNOLDS

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B.

Handberg, United States Attorney for the Middle District of Florida, and the defendant,

ERIC LANCE REYNOLDS, and the attorney for the defendant, Thomas B. Luka,

Esq., mutually agree as follows:

**A.**   **Particularized Terms**

1.   Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Two of the

Information.  Count One charges the defendant with Coercion or Enticement of a

Minor to Engage in Sexual Activity, in violation of 18 U.S.C. § 2422(b). Count Two

charges the defendant with Distribution of Child Pornography, in violation of 18 U.S.C.

§ 2252A(a)(2) and (b)(1).

2.   Minimum and Maximum Penalties

Count One is punishable by a mandatory minimum term of imprisonment

of 10 years up to life, a fine of no more than $250,000, a term of supervised release of at

least 5 years, up to life; and a special assessment of $100.

Defendant's Initials _ERR_

Count Two is punishable by a mandatory minimum term of imprisonment of 5 years, up to 20 years; a fine of no more than $250,000; a term of supervised release of at least 5 years, up to life; and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

Additionally, pursuant to 18 U.S.C. § 3014, the Court shall impose a $5,000 special assessment on any non-indigent defendant convicted of an offense in violation of certain enumerated statutes involving: (1) peonage, slavery, and trafficking in persons; (2) sexual abuse; (3) sexual exploitation and other abuse of children; (4) transportation for illegal sexual activity; or (5) human smuggling in violation of the Immigration and Nationality Act (exempting any individual involved in the smuggling of an alien who is the alien's spouse, parent, son or daughter).

3.    <u>Elements of the Offenses</u>

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

| <u>First</u>: | The defendant knowingly persuaded, induced, enticed, or coerced the individual named in the Information to engage in sexual activity, as charged; |
| --- | --- |
| <u>Second</u>: | The defendant used the Internet to do so; |

Defendant's Initials _____    2

Third:    When the defendant did these acts, the individual named in the Information was less than 18 years old; and

Fourth:    One or more of the individuals engaging in the sexual activity could have been charged with a criminal offense under the law of the State of Florida.

The elements of Count Two are:

First:    The defendant knowingly distributed an item or items of child pornography;

Second:    Either (a) the defendant distributed the item or items of child pornography using any means or facility of interstate or foreign commerce; or (b) the item or items of child pornography had been shipped or transported in or affecting interstate or foreign commerce; and

Third:    When the defendant distributed the items, the defendant believed the items were or contained child pornography.

4.    Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.    Counts Dismissed

At the time of sentencing, the underlying Indictment against the defendant will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

6.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the

Defendant's Initials  RR                    3

time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

7.     <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. §§ 3663A(a) and (b), and 2259, defendant agrees to make full restitution to known victims of the offenses for the full amount of the victims' losses as determined by the Court. Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

8.     <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for

Defendant's Initials           4

acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

    9.    <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 2428 and 2253, whether in the possession or control of the United States, the defendant or defendant's nominees.

The asset to be judicially forfeited specifically includes, but is not limited to, the following: an Apple iPhone 12 Promax, serial number F2DQJU10D45, which asset was used to commit the offense charged in Count Two. The defendant further agrees to the administrative forfeiture of Galaxy Tab E, model number SMT56ONU, which contained images of child pornography. The defendant agrees that this provision provides him with actual notice of the administrative forfeiture of this asset, and waives the right to receive notice of any subsequent administrative forfeiture of this asset.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging

Defendant's Initials _____

5

instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To

Defendant's Initials _____               6

that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

Defendant's Initials _C ЉR_                7

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

10.   Abandonment of Property - Computer Equipment

The United States of America and defendant hereby agree that any computer equipment as defined in 18 U.S.C. § 2256, seized from the defendant and currently in the custody and/or control of the Federal Bureau of Investigation or other appropriate agency, were properly seized and are subject to forfeiture to the government according to 18 U.S.C. §§ 2253 or 2254, and/or that the computer equipment and peripherals constitute evidence, contraband, or fruits of the crime for which he has pled guilty.  As such, defendant hereby relinquishes all claim, title and interest he has in the computer equipment and peripherals to the United States of America with the understanding and consent that the Court, upon approval of this agreement, hereby

Defendant's Initials _C AR_                8

directs the Federal Bureau of Investigation, or other appropriate agency, to cause the computer equipment described above to be destroyed forthwith without further obligation or duty whatsoever owing to defendant or any other person.

As part of the plea agreement in this case, defendant hereby states under penalty of perjury that he is the sole and rightful owner of the property, and that defendant hereby voluntarily abandons all right and claim to and consents to the destruction of: an Apple iPhone 12 Promax, serial number F2DQJU10D45; and a Galaxy Tab E, model number SMT56ONU.

11.   Sex Offender Registration and Notification

The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school.  Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student.  The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

Defendant's Initials _C A R_                    9

**B.**   **Standard Terms and Conditions**

    1.   <u>Restitution, Special Assessment and Fine</u>

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

        On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $200, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials ⟨/A⟩        10

2.  <u>Supervised Release</u>

The defendant understands that the offenses to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.  <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.  <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.  <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's

Defendant's Initials                     11

financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.  The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to

Defendant's Initials _E A K_                    12

the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

    7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials _C R R_         13

8.   <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.   <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against

Defendant's Initials _C R R_                    14

defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _C R R_          15

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___10___ day of March, 2022.

ROGER B. HANDBERG
United States Attorney

ERIC LANCE REYNOLDS
Defendant

for Jennifer M. Harrington
Assistant United States Attorney

Thomas B. Luka, Esq.
Attorney for Defendant

Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

Defendant's Initials _LLR_                    16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO.  6:21-cr-61-RBD-DCI

ERIC LANCE REYNOLDS

<u>PERSONALIZATION OF ELEMENTS</u>

With respect to Count One:

First:    Did you knowingly persuade, induce, entice, or coerce the
individual named in the Indictment to engage in sexual activity,
as charged?

Second:  Did you use the Internet to do so?

Third:   When you did these acts, was the individual named in the
Indictment less than 18 years old?

Fourth:  Could one or more of the individuals engaging in the sexual
activity have been charged with a criminal offense under the law
of the State of Florida?

With respect to Count Two:

First:    Did you knowingly distribute an item or items of child
pornography?

Second:  Was at least one of the following true: (a) you distributed the
item or items of child pornography using any means or facility
of interstate or foreign commerce; or (b) the item or items of
child pornography had been shipped or transported in or
affecting interstate or foreign commerce?

Third:   When you distributed the item, did you believe the item was or
contained child pornography?

Defendant's Initials           17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO.   6:21-cr-61-RBD-DCI

ERIC LANCE REYNOLDS

## FACTUAL BASIS

From on or about November 28, 2019, through on or about November 29, 2019, in the Middle District of Florida, and elsewhere, the defendant, ERIC LANCE REYNOLDS, using a facility and means of interstate commerce, did knowingly persuade, induce, entice, or coerce, and attempt to persuade, induce, entice, or coerce, an individual who had not attained the age of 18 years, to engage in sexual activity for which any person could be charged with a criminal offense, specifically: sexual battery of a person less than 12 years of age, in violation of Florida Statue 794.011.

On or about December 7, 2019, in the Middle District of Florida, and elsewhere, the defendant, ERIC LANCE REYNOLDS, did knowingly distribute child pornography, that is, the child pornography in the computer file title ending in "8a97," using any means and facility of interstate and foreign commerce and that had been shipped and transported in and affecting interstate and foreign commerce by any means.

### Background

On March 18, 2021, federal agents interviewed federal inmate JONATHAN BOUDREAU (BOUDREAU) at the United States Courthouse in the Middle District of Florida.  During the interview, BOUDREAU stated that approximately 15 years ago he

Defendant's Initials _____                    18

met a male named ERIC REYNOLDS, later identified as REYNOLDS, on a dating application called Grindr. BOUDREAU kept in touch with REYNOLDS and last communicated with REYNOLDS in early 2020. REYNOLDS had regular access to a minor, hereinafter "the minor."

REYNOLDS and BOUDREAU had a sexual relationship and shared an interest in child sexual abuse material (CSAM). On multiple occasions, BOUDREAU and REYNOLDS shared CSAM with each other through KiK and Telegram. REYNOLDS and BOUDREAU talked about the minor and REYNOLDS told BOUDREAU that he was slowly trying different things with the minor to further groom the minor into what BOUDREAU understood to be sexual activity.

Approximately 4 to 5 years ago, REYNOLDS invited BOUDREAU over to REYNOLDS' residence in Eustis, Florida. REYNOLDS told BOUDREAU that he had a surprise for BOUDREAU. BOUDREAU drove to REYNOLDS' residence and entered the residence. REYNOLDS led BOUDREAU to the bathroom where the minor was nude in the shower. BOUDREAU understood watching the child in the nude was REYNOLDS' alleged surprise. The minor exited the shower and walked around the residence while BOUDREAU and REYNOLDS watched. BOUDREAU and REYNOLDS engaged in sexual acts with each other, but not in front of, or with, the minor. BOUDREAU believed the minor was approximately 7 to 8 years old.

The next time BOUDREAU went to REYNOLDS' residence, he walked in and observed the minor blindfolded and nude on the bed. BOUDREAU and REYNOLDS took turns masturbating and performing oral sex on the minor. BOUDREAU believed

Defendant's Initials           19

that he and REYNOLDS were nude during the time they were sexually abusing the minor.  BOUDREAU recalled he performed oral sex on REYNOLDS while REYNOLDS performed oral sex on the minor.  BOUDREAU estimated he participated in abusing the minor at this location approximately 2 to 3 times.  BOUDREAU stated that he believed REYNOLDS was sexually abusing the minor on other occasions not with BOUDREAU present because the minor seemed to be "used to" the abuse.

In or around 2018, REYNOLDS moved to a different residence in Eustis, Florida.  BOUDREAU stated that he and REYNOLDS sexually abused the minor at least 3 to 4 times while at REYNOLDS' second residence in Eustis, Florida.  BOUDREAU recalled that there was an incident where BOUDREAU used his cellular telephone to record himself entering a room at REYNOLDS' apartment.  BOUDREAU activated his video camera on his cellular telephone and placed it in his front pants pocket so that the camera was still visible.  BOUDREAU stated the phone recorded for approximately 30 seconds.  BOUDREAU believed the recording captured REYNOLDS with the minor. The minor was nude and blindfolded on the bed.  BOUDREAU transferred the recording from his cellphone to an external hard drive, which was at his residence.  BOUDREAU volunteered to turn over the device and signed a consent to search form authorizing the FBI to search the device.

On March 19, 2021, agents went to xxxx Chandler Road, Apopka, Florida, and met BOUDREAU's attorney.  BOUDREAU's attorney provided law enforcement an external hard drive serial #WX41A64DKH9F.  Pursuant to consent, the external hard

Defendant's Initials _C R R_                20

drive was searched.  During the search, investigators located four videos which are

described below:

> **Video 1:**
>
> File Name:  IMG_6975
>
> Description: The video is approximately 3 seconds in length.  During the video, the minor is laying on a bed nude from the waist down.  The minor has a gray/white blanket covering the upper half of the minor's body.  The minor's erect penis is observed as the minor laid on the bed.
>
> **Video 2:**
>
> File Name:  IMG_6976
>
> Description:  The video is approximately 14 seconds in length.  During  the video, the minor is observed standing in a bedroom, next to a bed.  The minor is nude from the waist down and his penis is exposed.  In the video, the minor stated, "I don't want to use a mask".  A male can be heard responding "We'll do a little bit of the tasting and I'll let you play that for the rest."  The minor responded, "I don't like to..." and the video cut off.
>
> **Video 3:**
>
> File Name:  IMG_6977
>
> Description:
>
> The video is approximately 36 seconds in length.  During the video, the minor is observed standing in a bedroom, next to a bed.  The minor is nude from the waist down and his penis is exposed.  In the video a conversation occurred between, REYNOLDS, the minor, and BOUDREAU. During this conversation, the minor removes his shirt.  REYNOLDS does not appear to be under the influence of any substances. A transcript of the conversation is below:
>
> REYNOLDS: (REYNOLDS hands the minor a blind fold) "No attitude. So, are we doing attitude?  Take this off please."
>
> The minor: "I don't need two."
>
> REYNOLDS: (Brings the minor a second eye mask) "Yes...the last time."
>
> The minor: "Why?"

Defendant's Initials _C R R_                    21

REYNOLDS: "We are giving a lot of attitude.   I don't think he is going to get the surprise."

The minor: "I just don't like to wear two."

REYNOLDS:  "It doesn't seem [the minor] is going to get much of a surprise."

The minor: "[REYNOLDS]"

BOUDREAU: "Are you enjoying your thanksgiving break?"

The minor:  "Not right now."

REYNOLDS:  "With this attitude, he's not going to get anything."

**Video 4:**

File Name:  IMG_6978

Description:

The video is approximately 8 seconds in length.  During the video, it appears a person is walking with the recording device into a room in which the minor is in.  The minor is observed nude with an erect penis.  REYNOLDS instructed the minor, "Down further, move over this way." The minor then re-positions himself on the bed.

<u>Child Forensic Interview of the Minor</u>

On March 19, 2021, the minor was interviewed by a Child/Forensic Interviewer (CAFI).   The interview was video recorded and observed by FBI Special Agents. During the interview, the minor did not disclose any details about the sexual abuse.  After the interview, the FBI Special Agents requested to speak with the minor and a recorded interview occurred.  During the interview, the minor disclosed that REYNOLDS touched the minor's penis and performed oral sex on the minor between 15 to 50 times.  The minor stated the minor was blindfolded during the incidents.  The

Defendant's Initials                     22

minor believed REYNOLDS used his cellular telephone to take pictures of the minor while the sexual abuse occurred.

After the interview, the Lake County Sheriff's Office and the FBI contacted REYNOLDS at his residence in Mt. Dora, Florida.  REYNOLDS answered the door to his residence and was advised that someone had made allegations that REYNOLDS had sexually abused them.  REYNOLDS exited his residence and agreed to speak with the investigators.  The interview was recorded, and prior to the interview beginning, REYNOLDS was advised he was not under arrest, he did not have to answer any questions, and was free to leave.  REYNOLDS stated he understood and an interview occurred.

During the interview, REYNOLDS stated he knew who BOUDREAU was and identified BOUDREAU as "Jay."  REYNOLDS stated he had a sexual relationship with BOUDREAU.  REYNOLDS claimed he was scared of BOUDREAU and stated BOUDREAU often sent him CSAM.  Occasionally, BOUDREAU asked REYNOLDS to send him CSAM and REYNOLDS stated he used to send CSAM to BOURDREAU from his old cellular telephone using the KiK and Telegram applications.  An FBI agent asked REYNOLDS if he had viewed CSAM on any of the devices he currently owned.  REYNOLDS stated he had seen CSAM on his current cellular telephone identified as an Apple iPhone 12 Pro Max and on his Galaxy tablet.  REYNOLDS provided the items to the FBI agent and provided verbal consent to search the Devices.  REYNOLDS unlocked his iPhone 12 and directed the FBI agent to the KiK application.

Defendant's Initials _C_H/K_                     23

REYNOLDS was asked about abusing the minor. REYNOLDS adamantly denied ever abusing the minor. REYNOLDS was advised that law enforcement had viewed a video in which REYNOLDS is abusing the minor. REYNOLDS demanded to see the video. The FBI agent showed REYNOLDS a portion of Video 3, described above. REYNOLDS identified himself in the video. REYNOLDS stated the video was recorded at his apartment in Eustis, Florida. REYNOLDS stated he did not remember sexually abusing the minor and claimed he was on drugs.

### Search Warrant and Forensic Review

Although REYNOLDS provided consent to search his iPhone 12 and Galaxy Tab E, on March 25, 2021, an FBI agent obtained a federal search warrant to search each of the devices.

On March 30, 2021, the FBI agent conducted an initial forensic review of an Apple iPhone 12 Pro Max (A2172), serial number F2LDQJU10D45. During the review, the FBI agent located images and videos of child sexual abuse material.

### Count Two - Distribution of Child Sexual Abuse Material

Specifically, the FBI agent located an image containing the file name ending in "8a97." The image was a close-up of an adult hand touching the penis of a child who is approximately 7-9 years old. The image was distributed from REYNOLD's KiK account on December 7, 2019 at approximately 10:05 a.m., via the Internet, which is a

Defendant's Initials _CAR_                    24

means and facility of interstate commerce.  The image was distributed during the below

conversation between REYNOLDS and another KiK user, hereinafter "D":

> REYNOLDS: Since you sent a video of touching I will send the same type back hold on what will you and me after I send you this?
>
> D: that's what I was hoping for.
>
> REYNOLDS: Ok how young you like to see?
>
> D: 5...6...7..10. lol
>
> REYNOLDS: You Not a cop right? And when I send this to you what will you   send me back?
>
> D: I am not. I swear
>
> D: a guy that loves seeing young pussy and young sucking and young  getting fucked. it's such a lust for me
>
> D: and if you are for real I will return the favor
>
> D: I was hoping to meet someone I really was
>
> D: did I lose you?
>
> REYNOLDS: No I am here
>
> D: ok. no pressure man haha
>
> REYNOLDS: I will send you my icebreaker what will you send me that?
>
> REYNOLDS: Back?
>
> REYNOLDS: Not that lol
>
> D: you show.me what I'm hoping to see and you will see me getting my dog all the way hard
>
> D: and if you send another that's even better I will suck him for you
>
> REYNOLDS: After I send this icebreaker will you send me a video of you sucking him and getting him hard and then I will send you another one?
>
> D: I would like to do the order I just said please. you won't be disappointed

Defendant's Initials _____ *C A R*                    25

D: I want to show you

D: everything. but we need to kinda move along here my son is gonna come up stairs pretty soon.

D: but haha no rush

REYNOLDS: Just saying that it be nice to see more than touching after I sent you this icebreaker that way I can see some kind of action going on to comparable to what I will be sending you

D: like very soon actually lol

REYNOLDS: Would you make a live video with him and send it to me?

D: you will see him hard as a rock. me getting a dog hard In a live vid man. that's a huge thing for a guy to do and then more right after that. that's m offer. I don't want you to get upset so if you are out then just say

D: it's ok?

D: ok

REYNOLDS: Ok

D: ok your out. or ok your sending?

REYNOLDS: Yes ok going to send

D: I'm excited

REYNOLDS: *REYNOLDS sent an image of a male child approximately 7-9 years old who is dressed in pajamas standing in the bathroom. The image is taken through a peephole of the bathroom door.*

D: the waiting is Killing me haha

REYNOLDS: It is sending

D: lol slooooow

REYNOLDS: Yes

D: *D sent an unknown image*

Defendant's Initials _C A R_                26

D: you see to me what I've just sent is way over the top compared to what you just sent

D: so you see. that's me.. live haha right now stroking my dog

REYNOLDS: I'm going to send you a good one can you send me you sucking him back?

D: we can go more. but what I've done is way more than what you've sent so in order for me to go again I need something very good from you.

D: you understand right?

D: I will i has to be very good

D: like cum

D: or young sucking

REYNOLDS: I got you yes it will be really good so that you can send me a video of you sucking it

D: ok (emoticon)

REYNOLDS: May I ask you a question would you ever take a live video for me with you and your son?

REYNOLDS: *REYNOLDS sent an image with the file name ending in "8a97." The image was described above and is the image charged in Count Two of the Information.*

REYNOLDS: It is sending

D: doing what?

D: I'm not sexual with him

D: I never did. wanted to!

REYNOLDS: doing the video I just sent you

REYNOLDS: Would you send me a live video of you doing the video that I just sent you?

D: not possible

Defendant's Initials _C M R_                    27

REYNOLDS: Your turn

REYNOLDS: Did I lose you?

D: dog is outside and son is up. I am not lying

REYNOLDS: You can send me a live video with you and your son :-) or check

REYNOLDS: That would be fair to the one that I sent you

D: if you can keep going I owe you

D: a d wanna keep going

D: *D sent an unknown image*

Further review of the Apple iPhone 12 Pro Max (A2172), serial number F2LDQJU10D45, revealed that REYNOLDS was in Orange County, in the Middle District of Florida, at the time he distributed the image charged in Count Two of the Information.

<u>Receipt of Child Sexual Abuse Material</u>

Additionally on the iPhone 12 Pro Max, the FBI agent located a file containing the file name ending in "f50e." This file was received by REYNOLDS on November 28, 2019 at approximately 3:14 p.m. (UTC-5) through KiK messenger and was distributed by user "J Leek" (teepeeluv) to REYNOLDS. The image is a close up of an adult male's penis being inserted into the anus of a male child who is approximately 7-9 years old. Review of the iPhone 12 Pro Max revealed REYNOLDS was in Lake County, in the Middle District of Florida, at the time he received the image described above.

<u>Possession of Child Sexual Abuse Material</u>

The FBI agent's review of the iPhone 12 Pro Max revealed approximately 6 videos and 12 images of CSAM. One of the videos located, titled

Defendant's Initials _C A K_                          28

"telegram_video.MP4", is approximately 2 minutes and 59 seconds in length and features a naked male child who is approximately 7-9 years old. The child is positioned on all fours on a bed. An adult male enters the video and handcuffs the child's wrists. The adult male then places yellow tape over the child's mouth and instructs the child back onto all fours. The adult male anally rapes the child.

The FBI agent viewed the Galaxy Tab E that REYNOLDS provided. The agent located approximately 30 images (thumbnails) of CSAM in the following file path:  Internal storage>Android>data>org.videolan.vlc>files> medialib.  The images contained children being sexually abused and the ages of the victims ranged from infant to 10 years old.  The file details indicated the files were last viewed on December 2, 2020. One of the images located, containing file name ending in "0310.MP4.jpg," depicts an adult male penis inserted into the mouth of an infant.

<u>Count One - Coercion and Enticement of a Minor to Engage in Sexual Activity</u>

A search of REYNOLDS' chat history revealed the following communications between REYNOLDS and BOUDREAU via KiK messenger between November 28, 2019 and November 29, 2019. During these chats, REYNOLDS and BOUDREAU discuss a plan to sexually abuse the minor victim together on November 29, 2019. A portion of the conversation is contained below:

BOUDREAU: Go to bed now if you guys play tonight make videos so we can watch tomorrow

BOUDREAU: Or get some footage from him showering

REYNOLDS: He has not been wanting to do that been weird :-(

Defendant's Initials _C ᐱ ᐱ_        29

BOUDREAU: Aww maybe can talk him into it in the morning or we do it in his sleep

BOUDREAU: If he showers though get something so I can see how big it's getting

REYNOLDS: You going to bring lube and poppers and let me fuck you and be all clean ?

BOUDREAU: I'm gonna try for all that

REYNOLDS: What time are you thinking?

BOUDREAU: I'm getting off here now bf is around

BOUDREAU: 8-9

REYNOLDS: Ok

BOUDREAU: Good night at least try to get him naked for shower or something so you can see it

BOUDREAU: Night night

REYNOLDS: Maybe if you bring some money for him to but (*sic*) an game when we go to the store tomorrow for his wiiu (*sic*) I can talk him in the something

BOUDREAU: Yeah

REYNOLDS: Ok

REYNOLDS: Make sure you clean out really good maybe we can both do poppers and I can fuck you hard and good and deep while you suck him

REYNOLDS: Maybe if you can help me it a little with some money to I can find an way to let you see him suck me some

REYNOLDS: Hey you there?

REYNOLDS: I have not heard from you guessing you are not able to come over going back to sleep

BOUDREAU: Yeah

Defendant's Initials _____    30

The conversation continued, and REYNOLDS asked BOUDREAU if he's still coming over, to which BOUDREAU said yes. REYNOLDS asked what BOUDREAU was bringing and BOUDREAU responded saying "all... lube & poppers." REYNOLDS replied with, "Anything for (the minor)?" BOUDREAU then said "$" and REYNOLDS replied with "Ok."

Later in the conversation as BOUDREAU was arriving to REYNOLDS' residence in Eustis, Florida, REYNOLDS said "What do you want to do? Want to suck him or see him suck me?" and BOUDREAU said, "Yea parked probably suck him. Should I come in," to which REYNOLDS responded, "Just suck him not see him suck me? Yes come on." BOUDREAU said, "Or both." REYNOLDS responded, "You tell me."

About an hour passed before the next message between BOUDREAU and REYNOLDS. BOUDREAU then messaged REYNOLDS stating, "Ugh. It's so hard you just want him to be like [name used by the minor to refer to REYNOLDS] I love you keep doing it to me."

On November 28 and 29, 2019, the minor had not attained the age of 12 years. During the relevant time period, REYNOLDS was a parent, relative, or legal guardian of the minor, or the minor was otherwise in the custody, care, or supervisory control of REYNOLDS.

Defendant's Initials _____ ⟨ _ℛ ℛ_

31